UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW KOZAR, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 2634 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| OFFICER MUNOZ, OFFICER HARDWICK, OFFICER ERVIN, OFFICER FABIAN, OFFICER COLLIER, OFFICER SMITH, and COUNTY OF COOK, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Andrew Kozar, at all relevant times a detainee at Cook County Jail, filed this suit under 42 U.S.C. § 1983, alleging that correctional officers Xavier Collier, Lewis Ervin, Joseph Fabian, James Hardwick, Christopher Munoz, and Jerold Smith were deliberately indifferent on several occasions to a substantial risk of harm posed by other detainees. Doc. 40. Cook County is a defendant for purposes of indemnification. *Id*. at 10-11. With discovery closed and a jury trial set for June 5, 2017, Docs. 50, 74, Defendants have moved for summary judgment, Doc. 65. The motion is granted in part and denied in part.

### Background

The following facts are stated as favorably to Kozar as permitted by the record and Local Rule 56.1. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering Defendants' motion, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015). Kozar has conceded summary judgment on his *Monell* claim, medical care claims, and claims pertaining to an alleged January 31, 2014 attack, Docs. 68, 73, so facts regarding those claims are not included.

1

### A. December 26, 2013 Incident

On December 26, 2013, Kozar was in his cell at Cook County Jail with several other detainees. Doc. 70 at ¶¶ 1-2. Four of our defendants—Collier, Ervin, Fabian, and Smith—were the only correctional officers on duty in Kozar's area. *Id*. at ¶ 6. Kozar did not expect to be assaulted that day, and so he did not tell any of the officers that he feared that he would be assaulted. Doc. 67 at ¶ 9.

Kozar was sitting on his bed when a detainee approached him, pulled his pants down, and put his genitals near Kozar's face. Doc. 70 at ¶ 2. Another detainee thrust a storage bin on top of Kozar to try to pin him down, and then covered him with a blanket and punched him repeatedly. *Ibid*. During this attack, Collier and Smith walked past Kozar's cell. Doc. 67 at ¶¶ 6-7. They looked inside, saw what was happening, shook their heads, and walked away. *Id*. at ¶ 6; Doc. 70 at 3. Twenty to forty seconds later, while Kozar was being pummeled, two officers entered the cell and broke up the fight. Doc. 67 at ¶ 8. One of the officers was Fabian, and the other is unknown. *Ibid*. Ervin was in another area eating lunch during the entire episode. Doc. 70 at ¶ 7. Kozar suffered a split lip, bruises all over his body, and perhaps a concussion as a result of the assault. *Id*. at ¶ 13.

### B. May 19, 2014 Incident

Kozar began sharing a cell with a detainee named Juan Rivera on April 30, 2014. Doc. 67 at ¶ 19. Rivera's behavior made Kozar feel afraid; Rivera talked to himself, made nonsensical comments, forced Kozar to turn around when Rivera urinated, and acted "generally paranoid." *Id*. at ¶¶ 19-20. Kozar first reported these concerns about a week after he began living with Rivera. *Id*. at ¶ 19. By May 19, Kozar sensed that Rivera's condition had worsened; he was

pacing around the cell, talking to himself, and saying that everyone was going to rape him. Doc. 70 at ¶ 15.

Another of our defendants, Munoz, was the correctional officer supervising Kozar's cell from 3:00 to 11:00 p.m. on May 19. *Id*. at ¶ 16. Kozar told Munoz several times that day that he was afraid of Rivera. *Id*. at ¶ 17. At one point, Kozar told Munoz: "You gotta get me out of this cell. This man is mentally unstable. I can't be in here. I'm afraid of this guy. I don't know what I'm going to do." *Ibid*. Kozar even asked to be put in solitary confinement in order to get away from Rivera. *Ibid*. Munoz initially told Kozar that he was looking into moving Kozar out of Rivera's cell, but later said that it would take too much time. Doc. 67 at ¶ 22; Doc. 70 at ¶ 18. Munoz walked past Kozar's cell every fifteen minutes until the end of his shift. Doc. 67 at ¶ 22.

Kozar fell asleep sometime before 11:00 p.m. *Id*. at ¶ 23. Shortly before midnight, Kozar awoke to find that Rivera had become agitated. *Id*. at ¶ 16. Rivera punched Kozar in the face, leaving him with a broken nose and severe bruising. *Id*. at ¶¶ 16-17.

### C. November 1, 2014 Incident

On November 1, 2014, Kozar was being held in a dormitory. Doc. 70 at ¶ 23. Our last defendant, Hardwick, was the only correctional officer supervising the dormitory, which housed about 48 detainees. Doc. 67 at ¶ 29. A dispute arose at one end of the room, where Kozar and other detainees were gathered. Doc. 70 at ¶ 24. One detainee began to "get loud" with Kozar. *Ibid*. As the detainee approached him in an aggressive manner, Kozar maneuvered around some bunk beds to get away and yelled out to Hardwick for help. *Id*. at ¶ 25. Hardwick watched what was happening but did not intervene. *Ibid*. Kozar grabbed a nearby cane and swung it to block the approaching detainee. *Id*. at ¶ 26. The detainee overpowered Kozar, grabbed the cane, and threw him to the ground. *Ibid*.

3

Hardwick walked slowly toward the fight and then stopped a few feet away from Kozar as he was lying on the ground being punched and kicked. *Id*. at ¶¶ 26-27. Hardwick stopped other detainees from separating Kozar from his attacker, telling them to "let them fight it out." *Id*. at ¶ 27. Hardwick ultimately broke up the fight. Doc. 67 at ¶ 31. It was approximately one-and-a-half to two-and-a-half minutes from the time Kozar yelled for help until Hardwick ended the altercation. *Id*. at ¶ 29.

There is a video of this incident, and a reasonable jury could find that it transpired as just described. Kozar suffered a shoulder injury and a seizure. Doc. 70 at ¶ 28.

## Discussion

### I. Deliberate Indifference

"Because [Kozar] was a pretrial detainee, his deliberate-indifference claim arises under the Fourteenth Amendment's Due Process Clause but is governed by the same standards as a claim for violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013); *see also Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 554 n.31 (7th Cir. 2016) (reaffirming this due process standard for deliberate indifference claims by pretrial detainees notwithstanding *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which holds that the due process standard for excessive force claims by pretrial detainees is less demanding than the Eighth Amendment standard for excessive force claims by convicted inmates).

The Constitution requires prison officials to protect detainees from violence inflicted by other detainees. *See Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) ("Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners."); *Guzman v.*

4

*Sheahan*, 495 F.3d 852, 856-57 (7th Cir. 2007). But not every act of detainee-on-detainee violence results in a constitutional violation. *See Dale*, 548 F.3d at 569; *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). "A prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). But "[o]nce prison officials know about a serious risk of harm, they have an obligation to take reasonable measures to abate it." *Dale*, 548 F.3d at 569 (internal quotation marks omitted). To prevail on a deliberate indifference claim, a plaintiff must show that (1) he was exposed to a "substantial risk to his or her health or safety," and (2) the defendant was "deliberately indifferent to the substantial risk." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012); *see also Gevas*, 798 F.3d at 480; *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010); *Guzman*, 495 F.3d at 857; *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000).

As to the substantial risk element, also called the objective element, the plaintiff must show that he faced a risk of harm that was "almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). In the context of detainee-on-detainee assault, "risks attributable to … highly probable attacks" and "particular detainees who pose a heightened risk of assault to the plaintiff" satisfy this element. *Ibid.* (internal quotation marks omitted). Defendants do not and could not plausibly argue that Kozar fails to meet this requirement, as he has adduced evidence showing that he was thrice assaulted by other detainees and that those assaults caused serious bodily harm. Doc. 67 at ¶¶ 16, 30; Doc. 70 at ¶¶ 13, 28.

As to the deliberate indifference element, also called the subjective element, Kozar must adduce evidence showing that the defendant "effectively condone[d] the attack by allowing it to happen." *Santiago*, 599 F.3d at 756. Each defendant must have "had actual knowledge of an

5

impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Ibid*. "Prison officials who had actual awareness of a substantial risk to the health or safety of an inmate incur no liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent." *Guzman*, 495 F.3d at 857 (internal quotation marks omitted); *see also Borello*, 446 F.3d at 749 (noting that an officer is not relieved of liability "simply because he or she takes *any* action in response to a risk of harm to an inmate—that response must be reasonable"). "[M]ere negligence or even gross negligence does not constitute deliberate indifference." *Borello*, 446 F.3d at 749. However, "[t]he official cannot escape liability by showing that he did not know that a plaintiff was especially likely to be assaulted by the specific prisoner who eventually committed the assault," and "it does not matter whether the prisoner is at risk for reasons personal to him or because all the prisoners face the risk." *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001).

### A. December 26, 2013 Incident: Collier, Ervin, Fabian, and Smith

Kozar's claims against Collier, Ervin, Fabian, and Smith concern the attack on December 26, 2013, when they were on duty in the part of the jail where Kozar was assaulted. Doc. 70 at ¶ 6. Drawing all reasonable inferences in Kozar's favor, Collier and Smith saw Kozar being assaulted, shook their heads, and walked away. Doc. 67 at ¶ 6; Doc. 70 at ¶¶ 3, 7. Fabian helped break up the fight, and Ervin was at lunch the whole time. Doc. 67 at ¶ 8; Doc. 70 at ¶ 7.

Kozar's claims against Fabian and Ervin cannot proceed. In Kozar's view, the two officers who saw Kozar being assaulted and walked away "must have been Defendants Smith and Collier." Doc. 70 at ¶ 7. Fabian arrived at Kozar's cell "for the first time" when he broke up the fight and "expressed genuine surprise at finding Plaintiff being assaulted." Doc. 67 at ¶ 8;

Doc. 70 at ¶ 7. Ervin was at lunch during the entire incident. Doc. 70 at ¶ 7. Deliberate indifference requires "*actual* knowledge of an impending harm," *Santiago*, 599 F.3d at 756 (emphasis added), and "personal involvement in the alleged constitutional deprivation," *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003), but Kozar has presented no evidence that either Fabian or Ervin knew about the attack before it occurred or while it was in progress. Therefore, the claims against Fabian and Ervin fail as a matter of law.

Kozar's claims against Collier and Smith survive. Kozar faced a substantial risk of harm in an objective sense when those officers (allegedly) walked past his cell while he was being beaten up. And Kozar raises a genuine issue as to the subjective requirement, as his testimony paints a picture of two officers viewing an ongoing assault and then simply walking away. Such behavior "constitute[s] a paradigm case of deliberate indifference." *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (describing a situation where the officer "did witness an inmate assault, but failed to intervene"); *Haley v. Gross*, 86 F.3d 630, 642 (7th Cir. 1996) (describing a situation where the officer "walk[ed] away" from feuding inmates "with nary a hint that he intended to do anything about the situation"). Collier and Smith knew that Kozar faced a grave risk when they saw him being attacked. That they were not warned *before* Kozar was attacked and that the fight stopped soon *after* they walked away are irrelevant; they were equipped to "take reasonable measures to abate" the danger as soon as they saw Kozar being assaulted. *Farmer*, 511 U.S. at 847. They did not take "appropriate steps to protect him" because they did not take any steps at all. *Weiss*, 230 F.3d at 1032.

Defendants dispute Kozar's account of the officers' behavior. They argue that Kozar's narrative is implausible because Fabian has never seen officers walk away from a cell without rendering assistance and that Kozar's testimony is consistent with the proper procedure, which is

7

to call for backup and wait for it to arrive. Doc. 70 at ¶¶ 3-4. Defendants further assert that Kozar could not identify Collier and Smith by appearance or determine whether they had the keys to open his cell. Doc. 67 at ¶ 7; Doc. 70 at ¶ 3.

These arguments misunderstand the summary judgment standard, which requires the court to make all reasonable inferences in Kozar's favor and assume that his testimony is true. *See Arroyo*, 805 F.3d at 281; *Woods*, 803 F.3d at 867. Defendants have cited no evidence that backup was called or that Collier and Smith did not have the keys to Kozar's cell at the time of the assault. By contrast, Kozar asserts—and supports with admissible evidence—that he saw two officers view his ongoing assault, acknowledge what they were witnessing by shaking their heads, and simply walk away. Doc. 70 at ¶ 3. The jail's duty logs support Kozar's identification of those two officers as Collier and Smith. Doc. 67 at ¶ 7; Doc. 70 at ¶¶ 6-7. Kozar also testified that two officers ultimately broke up the fight. Doc. 67 at ¶ 8. This fact is incompatible with the notion that backup was required, since the number of officers who stopped the assault was no greater than the number of officers who walked away from it. *Cf. Guzman*, 495 F.3d at 858 ("A prison guard, *acting alone*, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make clear that such action would put her in significant jeopardy.") (emphasis added).

In sum, Defendants' arguments boil down to a request that the court believe their version of events and discredit Kozar's testimony. Such credibility assessments are within the sole province of the factfinder at trial, not the court on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … ruling on a motion for summary judgment … .").

There is one aspect of Kozar's claim regarding the December 26, 2013 assault that he may not pursue at trial. Kozar argues that "the assailant was on 'hold alone' status" and therefore not supposed to be in his cell at all. Doc. 70 at ¶ 9. That theory is not supported by admissible evidence. The only information indicating that the assailant was supposed to be held alone rests on inadmissible hearsay, in the form of comments that other individuals allegedly made to Kozar. *Ibid.*; *see Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."); *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998) ("Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). Moreover, Kozar has not submitted any admissible evidence showing that Defendants knew about the assailant's status or participated in placing the assailant in Kozar's cell. Doc. 70 at ¶¶ 8-10.

### B. May 19, 2014 Incident: Munoz

Kozar's claims against Munoz are based on a common fact pattern in deliberate indifference cases, in which a correctional officer ignores repeated complaints that the detainee is under the threat of violence and there is a subsequent assault. *See Borello*, 446 F.3d at 748-49 (citing *Velez v. Johnson*, 395 F.3d 732, 736-37 (7th Cir. 2005); *Haley*, 86 F.3d at 642); *Brown*, 398 F.3d at 914. Kozar asserts that his cellmate Rivera's erratic behavior made him fear for his physical safety, and that he expressed those fears to Munoz several times on May 19, 2014. Doc. 67 at ¶ 22; Doc. 70 at ¶¶ 15, 17. Kozar pleaded with Munoz to be separated from Rivera, whose behavior was "getting worse," and even offered to endure solitary confinement so that he might avoid spending the night with Rivera. Doc. 70 at ¶¶ 15, 17. Munoz refused to help Kozar change cells. *Id*. at ¶ 18. Rivera assaulted Kozar less than an hour after the end of Munoz's shift. Doc. 67 at ¶ 15; Doc. 70 at ¶ 16.

9

On those facts, a jury reasonably could find that Munoz "had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from [Munoz's] failure to prevent it." *Santiago*, 599 F.3d at 756. Kozar's multiple complaints about Rivera put Munoz on notice of impending harm, and his failure to separate Kozar from Rivera supports the inference that he consciously refused to prevent the harm that occurred less than an hour after he left his post. Munoz "did not have to know the specifics of the danger to be culpable. Indeed, accepting [Munoz's] position would essentially reward guards who put their heads in the sand by making them immune from suit—the less a guard knows the better. … What matters is that [Munoz] was aware of a serious risk of harm in some form … ." *Velez*, 395 F.3d at 736. Kozar has presented sufficient evidence to raise a genuine issue of fact as to Munoz's awareness of that risk and whether Munoz took "appropriate steps to protect" Kozar in response. *Weiss*, 230 F.3d at 1032. Munoz therefore is not entitled to summary judgment.

Munoz contends that the "concerns" Kozar expressed must not have been "substantial, specific, or impending," since Kozar "went to sleep after talking to Officer Munoz and did not tell the next shift any of his alleged concerns." Doc. 59 at 9. Although the facts might permit this view, they do not compel it. Rather, they are reasonably consistent with a narrative in which Kozar went to sleep at a normal hour, after it had become clear that repeating his unaddressed complaints would be futile, and that he did not have the opportunity to express his concerns to the next officer on duty because he was assaulted immediately after he woke up in the middle of the night. Doc. 67 at ¶ 15; Doc. 70 at ¶¶ 16, 19-20.

### C. November 1, 2014 Incident: Hardwick

Drawing all reasonable inferences in Kozar's favor, the November 1, 2014 incident unfolded as follows. During Hardwick's shift that day, Kozar called out for help when he was

10

being chased by another detainee. Doc. 70 at ¶¶ 23, 25. At that point, Hardwick acquired "actual, and not merely constructive, knowledge of the risk" to Kozar's safety. *Gevas*, 798 F.3d at 480. Kozar then was thrown to the ground, punched, and kicked. Doc. 70 at ¶ 26. While this was happening, Hardwick walked slowly toward the fight and stopped before he reached Kozar and his assailant; Hardwick prevented other detainees from separating Kozar from his attacker, telling them to "let them fight it out." *Id*. at ¶ 27. In so doing, Hardwick "effectively condone[d] the attack by allowing it to happen." *Santiago*, 599 F.3d at 756. Hardwick did not break up the fight until about two minutes after it began. Doc. 67 at ¶ 29. Because a jury could reasonably view Hardwick's actions as reflecting "a conscious, culpable refusal" to stop an ongoing assault, Kozar has raised a dispute of material fact regarding the subjective element of deliberate indifference. *Santiago*, 599 F.3d at 756.

## II. Qualified Immunity

Defendants contend that they are entitled to qualified immunity. Doc. 59 at 13-14. "Two central questions must be addressed in the course of determining whether qualified immunity is available." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016). The first is "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Ibid*. As shown above, this requirement is met as to Kozar's claims against Collier, Smith, Munoz, and Hardwick.

The second question is "whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi*, 818 F.3d at 319. To satisfy this requirement, Kozar must show that the constitutional right Defendants allegedly violated was clearly established "in a particularized sense, rather than at a high level of generality," at the time of the violation. *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("We do not require a case directly on point, but existing precedent must

have placed the statutory or constitutional question beyond debate."); *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015). "The official must have 'fair warning' that his conduct is unconstitutional." *Roe v. Elyea*, 631 F.3d 843, 859 (7th Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002)).

The rights that Defendants allegedly violated were clearly established. In *Velez*, the Seventh Circuit addressed how to frame the right that is violated when a pretrial detainee is "violently assaulted by his cellmate." 395 F.3d at 734. As the court explained: "Although [the parties] disagree over how the constitutional right at issue here should be characterized, we believe it is plainly the right to be free from deliberate indifference to rape and assault. There can be no debate that this right was clearly established at the time." *Id*. at 736 (citing *Farmer* for the proposition that "prison officials have [a] duty to protect inmates from rape and assault"). This characterization of the right encompasses Kozar's claims arising from all three attacks.

True, there is a distinction between the May 19, 2014 incident, where Munoz allegedly failed to reasonably respond to warnings of a future assault, and the December 26, 2013 and November 1, 2014 incidents, where Collier, Smith, and Hardwick allegedly failed to reasonably respond to an ongoing assault. But for qualified immunity purposes, the distinction makes no difference; a detainee's right to be free from deliberate indifference was clearly established under both sets of circumstances. *See Grieveson*, 538 F.3d at 778 (holding that an officer who "watched [an] assault but did not intervene" would "exhibit[] quintessential deliberate indifference"); *Borello*, 446 F.3d at 748-49 (noting that the Seventh Circuit has "found Eighth Amendment violations based on failure to protect, in which a prison official ignored an inmate's complaint that he feared violence from his cellmate or did not respond to actual violence between inmates"); *Velez*, 395 F.3d at 736 (affirming the denial of summary judgment because

12

the defendant officers did not respond to an inmate's emergency call during an assault); *Haley*, 86 F.3d at 643 (upholding a jury finding of deliberate indifference where an inmate told the defendant officer that his cellmate made him fear for his safety and the officer "said he would 'check into [moving the plaintiff],' but nothing happened"); *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (holding that the jury was entitled to find deliberate indifference where the officer had been "notified … of the threat against plaintiff and the need for a transfer" and "had done nothing to effect that transfer" before the plaintiff was severely beaten). This case law gave Collier, Smith, Munoz, and Hardwick "fair warning" that their alleged behavior would violate the Constitution. *Hope*, 536 U.S. at 740. Accordingly, they are not entitled to qualified immunity.

## Conclusion

Summary judgment is granted to Fabian and Ervin, and otherwise is denied. Kozar's claims against Collier, Smith, Munoz, Hardwick, and Cook County will proceed to trial on June 5, 2017.

January 31, 2017

United States District Judge